



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 26, 2022

**By ECF**
The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *United States v. Argam Taj*, S4 21 Cr. 249 (SHS)

Dear Judge Stein:

  The Government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for November 4, 2022. On June 7, 2022, Argam Taj, a/k/a "Sour," ("A. Taj" or the "defendant"), pleaded guilty to conspiracy to commit gun trafficking and to illegally transport or receive in the state of residence of the transporter or receiver firearms purchased or obtained outside of that state, in violation of Title 18, United States Code, Section 371. He pleaded guilty to those crimes in connection with his participation in a gun trafficking conspiracy that was responsible for transporting a total of at least 89 firearms from Georgia to New York. As explained below, the Government submits that a sentence of 60 months' imprisonment—the stipulated Guidelines and statutorily maximum authorized sentence—would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing. The United States Probation Office has also recommended a 60-month term of imprisonment, to be followed by a two-year term of supervised release. (Presentence Investigation Report ("PSR") at 26).

### I.  Factual Background

  From in or around September 2020 up to and including April 2021, the defendant participated in a scheme that trafficked scores of firearms from Georgia to New York. As set out in more detail in the defendant's PSR and the Government's sentencing submission for co-defendant Courtney Schloss, the defendant's gun-trafficking conspiracy involved a straw purchaser in Georgia—co-defendant DuVaughn Wilson—who purchased at least 89 firearms in approximately eight months at the behest of the defendant and others. Since October 2020, law enforcement has recovered at least twenty-three guns that were purchased by Wilson and trafficked by members of the conspiracy. At least four firearms recovered in this case were used in acts of violence. Specifically:

- A Ruger LCP #374-04787 was recovered from a fleeing subject on May 1, 2021, after NYPD responded to a ShotSpotter report relating to two rounds fired near 1301 Amsterdam

Avenue (549 Day Time to Crime).[1]  Further investigation revealed that this firearm was also used on or about October 31, 2021, during a shooting within the confines of the 28th Precinct.

- A SCCY Ind #C019857 was recovered from a subject by NYPD on June 16, 2021, near Livonia Avenue and Bristol Street in Brooklyn (246 Day Time to Crime).  Further investigation revealed that this firearm was also used during a shooting on or about November 19, 2020, within the confines of the 75th Precinct.

- A KelTec #G3C51 was recovered by the NYPD at the scene of a shooting near 1069 Teller Avenue in the Bronx on or about April 26, 2021 (195 Day Time To Crime).

- A Taurus #34784Z was recovered at the scene of a police-involved shooting near East 153rd Street and 3rd Avenue in the Bronx on or about February 21, 2021 (168 Day Time To Crime).[2]  Further investigation revealed that this firearm was also used during a January 21, 2021, shooting within the confines of the 26th Precinct.

A. Taj is a New York state resident, member of the Blixky Gang, and older brother of his co-defendant Samuel Taj ("S. Taj").  Over the course of the conspiracy, A. Taj: (i) solicited firearms, (ii) discussed selling firearms, and (iii) appeared in music videos and social media posts in GA and NY with firearms purchased by co-defendant Duvaughn Wilson.

Beginning in or around July 2020, A. Taj and co-defendant Courtney Schloss engaged in conversations about the need to acquire firearms.  On or about July 5, 2020, Schloss began to tell A. Taj, in sum and substance, that he was considering moving to Atlanta because of the availability of firearms.  On or about July 25, 2020, A. Taj told Schloss that he was able to acquire two "knocks" — a .40 caliber and a 9-millimeter; these firearms were not purchased by Wilson, indicating the presence of an additional straw purchaser.  In addition, on or about November 17, 2020, A. Taj spoke with an unindicted co-conspirator ("CC-1") about the sale of "knocks" to "Ray" — a "Spanish" man in the Bronx; these were recorded jails calls while CC-1 was incarcerated.

Between July and December 2020, A. Taj participated in group chats with Schloss and S. Taj and frequently discussed the availability of firearms.  For example, on December 30, 2020, A. Taj informed Schloss and S. Taj that he had purchased "a 40" for "450."  That is, a .40 caliber firearm for $450.  On or about January 4, 2021, A. Taj texted Schloss and S. Taj and said "gotta make mad knock sales" . . . "Call me the knocksmith."  S. Taj responded by stating that he had "2 ppl who need knox r[ight] n[ow]."  These three co-defendants continued to coordinate firearms purchases through on or about January 7, 2021.

---

[1] Time to crime measures the time between the purchase of a firearm and its crime-scene seizure by law enforcement.

[2] *See* https://www.amny.com/new-york/bronx/shootout-with-cops-in-bronx-leaves-armed-graffiti-vandal-critically-injured/.



A. Taj and his brother and co-defendant S. Taj who is pictured with a large sum of cash and a firearm.

In addition, on or about November 11, 2020, A. Taj and S. Taj helped Schloss book bus tickets from Georgia to New York.  A. Taj was also involved in a November 22-23, 2020 bus trip Schloss took from Georgia to New York in order to transport firearms and ammunition to New York.  Specifically, on or about November 22, 2020, Schloss and co-defendant Ken Alexander, a/k/a "Ryu," discussed booking tickets on Eagle Bus.  Schloss later sent a screenshot from gotobus.com to A. Taj, which showed an Eagle Bus trip scheduled to depart Atlanta at 8:00 pm on November 22, 2020, arriving in New York, New York at 11:30 a.m. on November 23, 2020.

On or about November 23, 2020, Schloss, Alexander, and another unindicted co-conspirator ("CC-2") boarded a bus in Atlanta, bound for New York.  At approximately 12:15 a.m., Schloss texted A. Taj to let him know, in sum and substance, that the police had stopped the bus and that he had guns on his person as well as in "the bag."  A. Taj responded by coaching Schloss through the stop, suggesting, in sum and substance, that he keep the guns on his person but that he should expect the bags stored under the bus to be searched.  Schloss told A. Taj that the "book bag" below the bus had "8 knocks, A drum, Bare clips, N shells."  A. Taj responded by chastising Schloss and telling him that he should have put clothes on top of the guns inside the bag.  Schloss replied that he had done exactly that by putting shirts on top of the guns.  Approximately ten minutes later, Schloss confirmed to A. Taj that the "knock bag" had been confiscated. A. Taj replied that he will be "callin town knock man in a couple of hours."  That is,

in light of the seizure, A. Taj offered that he would be contacting a gun supplier to help resupply Schloss.

During this time period, A. Taj also appears to have conducted some business online. On or about December 13, 2020, A. Taj received a message from an Instagram user "rays_tapped_in," who requested that A. Taj "bring [him] a pocket joint," which is a reference to a small handgun.

On or about March 9, 2021, A. Taj acquired a firearm from co-defendant Antonio Eaddy, a/k/a "Storm," ("Eaddy") and transported that firearm into New York. On or about March 9, 2021, Eaddy texted Schloss a video of two firearms (the "Video") and asked Schloss if he wanted to purchase them for himself and co-defendant Christopher Machado. One of the handguns in the Video has a unique Picatinny Rail that extends slightly beyond the muzzle and an extended magazine (Gun-1). Schloss responded that A. Taj was interested in one of the firearms. Simultaneously, Schloss texted A. Taj the Video. A. Taj responded by asking how much for "that stick, a reference to the extended magazine. Schloss responded "[$]750 I think [$]40 wt sticky." A. Taj then requested that Schloss have Eaddy call him. On or about March 13, 2021, A. Taj posted a video to Instagram showing himself in the back of a car with what appears to be Gun-1. The post was geotagged in Washington Heights, New York.

Finally, throughout the conspiracy, members of the Blixky Gang,[3] including A. Taj, frequently produced and shared music videos online, many of which included firearms and ammunition, some of which have been traced to Wilson. For example, in or around August 2020, A. Taj, S. Taj, and Schloss were featured in a music video entitled "M.I.S." The video features at least six firearms, some of which appear to be loaded with ammunition. And, in mid-October 2020, the Blixky Gang filmed a music video entitled "Word to Folk." In the video, A. Taj, S. Taj, and Schloss are all depicted holding firearms, many of which, based off the unique color and structure, appear to be firearms purchased by Wilson. In some instances, the individuals in the video remove magazines from the firearms to show that the weapons were loaded.

---

[3] As set forth in, among other places, the Government's sentencing submission for co-defendant Courtney Schloss, the Blixky Gang is composed primarily of aspiring rappers who regularly produce music videos and post content on social media in which gang members, including the defendant, brandish loaded firearms. The music produced by members of the Blixky Gang routinely glorify firearms and celebrate violence.



The defendant pointing a firearm at the camera in the music video for the song "Guns in the Booth"



The defendant with two firearms in his left hand in the music video for the song "Word to Folk"



The defendant pointing a firearm at the camera in the music video for the song "Word to Folk"



The defendant (middle with glasses) point a firearm equipped with a drum magazine at the camera in the music video for the song "M.I.S"

On or about June 1, 2020, the defendant was arrested for robbery, kidnapping, and strangulation —with Courtney Schloss — and faces charges brought by the New York County District Attorney (the "DANY Case"). The DANY Case is currently pending and is expected to proceed to trial sometime after the imposition of sentencing in this instant case.

At the time of his arrest in the instant case, the defendant was incarcerated at Rikers Island in connection with the DANY Case. When he was transferred into federal custody, the defendant was found to be in possession of two contraband weapons — a plastic coffee mug handle which had been fashioned into a shiv and a sharpened chicken bone. Photographs of both weapons are included below:



Chicken bone recovered from the defendant's mouth depicted on the left.
A sharpened plastic mug handle recovered from the defendant's
waistband depicted on the right.

Since his transfer into federal custody, the defendant has been cited twice for disciplinary infractions. Specifically, on or about August 26, 2022, the defendant was cited for (i) possession of a weapon and (ii) possession of a cell phone.

As set forth in the Government's letter dated August 23, 2022, the defendant is in the middle tier[4] of charged defendants in this case and is similarly situated to defendants Ken Alexander, a/k/a "Ryu," Chris Machado, a/k/a "Chris Elite," and his brother, Samuel Taj, a/k/a "Sosa." [5]

---

[4] While it is true that the defendant is listed as #7 on the list of defendants, the Government has consistently asserted that the members of the middle tier are roughly equal in terms of culpability. *See, e.g.*, Government Opp'n to S. Taj Bail Application, Oct. 13, 2021 (Dkt. 95) ("The defendant is similarly situated to co-defendant Ken Alexander, a/k/a "Ryu); Government Opp'n to C. Machado Bail Application, January 17, 2022 (Dkt. 122) (Machado "is similarly situated to co-defendant Ken Alexander, a/k/a "Ryu and Samuel Taj, a/k/a "Sosa.).

[5] In his sentencing submission, A. Taj seeks to separate himself from his brother and asks that his broth be sentenced to a "much lower sentences" than that imposed on A. Taj. Def. Sub at 1. As

## II.      The Plea, Guidelines Calculation, PSR, and Defendant's Sentencing Submission

On June 7, 2022, the defendant pleaded guilty to Count One of the Indictment. In the Plea Agreement, the parties stipulated that the defendant's base offense level is 22, pursuant to United States Sentencing Guidelines ("U.S.S.G") § 2K2.1(a)(3), because the offense involved semiautomatic firearms capable of accepting large capacity magazines, and the defendant committed this offense after sustaining a felony conviction for a crime of violence. The parties further stipulated that, under U.S.S.G. § 2K2.1(b)(1)(C), six levels are added because the offense involved between 25 and 99 firearms. The parties agreed that an additional four points were added pursuant to U.S.S.G. § 2K2.1(b)(5) because the defendant trafficked in firearms. After a three-level decrease for acceptance of responsibility, the parties stipulated that the defendant's total offense level is 29. The parties further stipulated that the defendant has five criminal history points and therefore was in Criminal History Category III. That resulted in a Guidelines Range of 108 to 135 months. Because the defendant's Guidelines range is above the 60-month statutory maximum sentence, the defendant's Stipulated Guidelines Sentence is 60 months' imprisonment (the "Stipulated Guidelines Sentence").

In his sentencing submission, the defendant has asked the Court for a sentence below the statutory maximum of 60 months. (Def. Sub. at 9.) The United States Probation Office has also recommended a 60-month term of imprisonment, to be followed by a two-year term of supervised release. (Presentence Investigation Report ("PSR") at 26).

## III.      Discussion

### A.  Applicable Law

The Guidelines still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

---

discussed further herein, the Government views A. Taj and S. Taj similarly in terms of culpability but notes that A. Taj is distinguished by his criminal history and conduct while in custody.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)     to afford adequate deterrence to criminal conduct;
(C)     to protect the public from further crimes of the defendant; and
(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

## B.  A Guidelines Sentence of Imprisonment is Necessary and Appropriate

The Government respectfully submits that the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) weigh in favor of a 60-month term of imprisonment.  The factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to afford adequate deterrence to this defendant and others, to protect the public from further crimes of the defendant, and to promote respect for the law.  18 U.S.C. § 3553(a)(2)(A)-(C).

The offense conduct was extremely serious.  Despite the clear and present danger posed by unlicensed civilians armed with firearms, the defendant knowingly and willfully participated in a conspiracy that trafficked over 89 such firearms into New York City.  That conduct is more than extremely serious; it is devastating to the people of the City of New York.  Trafficking firearms by its very nature contributes to other, violent crime throughout New York City.

As the Government set forth in more detail in its submission for co-defendant Courtney Schloss, individuals like the defendant who illegally traffic in firearms are the driving force behind an epidemic of gun violence in New York City.  There are no gun manufacturers in New York City.  Guns flow into the city via traffickers, like the defendant and his co-conspirators.  The New York Attorney General estimates that 76% of trafficked guns come into New York from seven states including —as is the case here—Georgia.[6]  These guns fuel violence in the city. In this case, that violence is far from hypothetical.  For example, as referenced above, on February 21, 2021, a suspect opened fire on police using a gun trafficked in this conspiracy, initiating a shootout that ended with the suspect in critical condition.

The defendant was an eager participant in a scheme that pushed dozens of firearms onto the streets of New York City thereby endangering the lives of New Yorkers now and into the future.  He is not a young man who suffered from a one-time lapse in judgement.  He repeatedly engaged in this conduct over the course of several months.  Even more striking, as with defendant Schloss, the defendant began participating in this conduct shortly *after* he committed a violent

---

[6] https://targettrafficking.ag.ny.gov/. *See also* Most Guns Used to Commit Crimes in New York Were Bought in Other States, Report Finds – NBC New York.

crime as alleged in the DANY case.  Over the course of the conspiracy, the defendant displayed an intimate knowledge of the trade by consistently demonstrating his familiarity with the pricing and availability of firearms.  He was an enthusiastic participant, boasting by text message about his success in the gun trade — going so far as to brand himself the "knocksmith."  He was a routine presence in Blixky Gang music videos, headlining and putting himself front and center in their near constant glorification of violence.  And, he did so with a complete disregard for the safety of public and the consequences of his actions.

As it relates to the need for specific deterrence and to protect the public from further crimes of the defendant, it bears noting that A. Taj's months-long participation in this conspiracy came after prior convictions for offenses involving firearms: (i) a gunpoint robbery conviction (PSR ¶ 53) and (ii) a criminal possession of a weapon conviction (PSR ¶ 54).  In addition, as described above, shortly before the relevant period for this conspiracy, the defendant was arrested for robbery, kidnapping, and strangulation —with Schloss — and faces charges in the DANY Case.  As described above, the defendant's crimes persisted in prison where he was found in possession of contraband (weapons) while both in state and federal custody.  A significant term of imprisonment is necessary to deter the defendant from continued dangerous criminal conduct and in turn, to protect the public.

The defendant spends a significant portion of his sentencing submission arguing that he should receive a below-Guidelines sentence because the conditions at MDC Brooklyn ("MDC") have been difficult.  The Government recognizes and appreciates that the Covid-19 pandemic and facility lockdowns have been very difficult for many inmates in prisons like MDC.  That said, those conditions do not outweigh the seriousness of the offense, the need to afford adequate deterrence to this defendant and others, the need to protect the public from further crimes of the defendant, and to promote respect for the law.

The defendant's criminal conduct cannot be taken lightly.  In particular, a below-Guidelines sentence as requested by defense counsel would grossly understate the seriousness of the defendant's crimes.  At a time when gun violence is so prevalent, the need for general deterrence, in particular, is striking. *See United States v. Cavera*, 550 F.3d 180 (2d. Cir. 2008) (district court's decision to consider New York market conditions in order to accomplish the goal of general deterrence in a gun trafficking case was not an abuse of discretion).  A Guidelines sentence of incarceration would send a message to the defendant and others like him that gun trafficking will not be tolerated.

In sum, a Guidelines term of incarceration would adequately balance the various considerations under § 3553(a) and achieve the statute's stated objectives.

**IV.     Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose a Stipulated Guidelines sentence of 60 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:     Ashley C. Nicolas
        Matthew J. King
        Assistant United States Attorneys
        (212) 637-2467 / 2384

cc:     Inga Parsons, Esq. (by ECF)